UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| Dane S. Robinson, | Case No. 2:21-cv-00721-DJA |
| Plaintiff, | |
| v. | **Order** |
| Kilolo Kijakazi, Commissioner of Social Security, | |
| Defendant. | |

Before the Court is Plaintiff Dane S. Robinson's motion for reversal or remand (ECF No. 21) and the Commissioner's cross motion to affirm (ECF No. 22) and response (ECF No. 23). Plaintiff filed a reply. (ECF No. 24). The Court finds that the Administrative Law Judge (ALJ) did not err in not considering medical opinions or conducting a credibility assessment. It also finds that Plaintiff has not connected the constitutional infirmity of the Social Security Act's removal provision to his claim. The Court thus denies Plaintiff's motion to remand (ECF No. 21) and grants the Commissioner's cross motion to affirm (ECF No. 22). The Court finds these matters properly resolved without a hearing. LR 78-1.

**I.      Background.**

    ***A.      Procedural history.***

Plaintiff filed an application for disability insurance benefits on February 19, 2016, alleging an onset of disability commencing October 30, 2015. (ECF No. 21 at 2). The Commissioner denied his claim and Plaintiff requested a hearing by an ALJ. (*Id.*). The ALJ issued an unfavorable decision on May 23, 2018. (*Id.*). The Appeals Council vacated the ALJ's decision on December 6, 2019 and remanded the case with instructions for it to be assigned to a different ALJ. (*Id.*). On remand, a hearing was held before ALJ Norman Bennett on June 11, 2020. (*Id.*). The ALJ denied Plaintiff's claim. (*Id*. at 2-3). The Appeals Council denied

Plaintiff's request for review of the ALJ's decision on February 25, 2021, making the ALJ's decision the final agency decision. (*Id.*).

### B. The ALJ decision.

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520. (AR 16-30). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 30, 2015. (AR 19). At step two, the ALJ found that Plaintiff has the following severe impairments: post-traumatic stress disorder, depressive disorder, and migraine headaches. (AR 20). At step three, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20). In making this finding, the ALJ considered Listings 12.04, 12.06, and 12.15. (AR 20).

At step four, the ALJ found that Plaintiff has a residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c) except:

> He is relegated to simple, repetitive tasks. The claimant can have only occasional contact with supervisors, coworkers, and the general public.

(AR 22).

At step five, the ALJ found that Plaintiff was unable to perform past relevant work. (AR 29). However, the ALJ found Plaintiff capable of performing occupations such as uniform attendant, supply worker, and packer. (AR 30). Accordingly, the ALJ found that Plaintiff had not been disabled from October 30, 2015. (AR 31).

## II. Standard.

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the

pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

**III.   Disability evaluation process.**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual

must provide "specific medical evidence" in support of him claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id*. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20

C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform his past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If he can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing

evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42

**IV.     Analysis and findings.**

    *A.     The ALJ did not err by not considering Dr. Owens' opinion.*

Plaintiff argues that the ALJ did not consider the opinion of Dr. Owens—an examining psychologist[1]—at all in determining RFC. (ECF No. 21 at 13-14). Plaintiff asserts that the ALJ's failure to consider this opinion means that judicial review is impossible, particularly because Dr. Owens opined that Plaintiff could not maintain full time employment, demonstrating Plaintiff's disability. (*Id.* at 12-14). The Commissioner responds that the ALJ had no duty to discuss Dr. Owens' opinion because it was not significant, probative evidence. (ECF No. 22 at 15). The Commissioner explains that other than confirming Plaintiff's diagnosis of PTSD, Dr. Owens' opinion merely repeated Plaintiff's symptom reporting, which reporting the ALJ already discussed. (*Id.*). Plaintiff replies that—although Plaintiff had records demonstrating normal mental status exams—the existence of other records indicating mental impairments means that the ALJ was not free to disregard Dr. Owens' opinion. (ECF No. 24 at 3).

In determining disability, the ALJ must develop the record and interpret the medical evidence. *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir.1996). In doing so, the ALJ must consider the "combined effect" of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. 20 C.F.R. § 416.923. However, in interpreting the evidence and developing the record, the ALJ does not need to

---

[1] The SSA changed the framework for how an ALJ must evaluate medical opinion evidence for claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight ... to any medical opinion(s)...." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Here, Plaintiff applied for benefits on February 19, 2016. (ECF No. 21 at 2). This would, therefore, make the old regulations discussed above applicable to Plaintiff's claims. 20 C.F.R. § 404.1520c ("For claims filed before March 27, 2017, the rules in § 404.1527 apply."). The Court thus applies the old regulations to Plaintiff's claims throughout this order.

"discuss every piece of evidence." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984).

Plaintiff relies on *Cochell v. Comm'r of the SSA* for the proposition that "[a]n opinion regarding the likelihood of a claimant to maintain gainful employment based on his or her impairments is not a conclusory statement and should be considered." (ECF No. 21 at 13) (citing *Cochell v. Comm'r of the SSA*, 3:14-cv-01201-ST, 2015 U.S. Dist. LEXIS 119056, at *16 (D. Or. Sept. 8, 2015)). But *Cochell* is factually distinguishable enough to not be persuasive. There, the ALJ gave only "some weight" to an examining doctor's opinion that the plaintiff was incapable of sustaining employment because that "determination [is] reserved for the commissioner." *Cochell*, 2015 U.S. Dist. LEXIS 119056 at *14-16. The court disagreed, explaining that the doctor's opinion included detailed reports of the plaintiff's symptoms, based on nearly two years of treatment and extensive testing. *See id.* In particular, the doctor's opinion contained objective symptom reports:

> Cochell's sentences will at time be run on and there is some mild circumlocution…Cochell's thought process was generally linear although there is some circumstantiality…Cochell's cognition was notable for deficits in executive function and memory…Cochell has clear evidence of left prefrontal dysfunction and evidence of disruption of corticostriatolimbic affective connections…Cochell's symptoms have rendered him incapable of sustaining competitive employment…since his motor vehicle accident in April of 2010…the brain areas affected by Mr. Cochell's traumatic brain injury would predictably lead to executive function problems, auditory and general memory impairment, and fine motor deficits…both clinical experience and two different neurophysical test results corroborate significant impairments in memory function and perceptual reasoning…Despite reporting some improvements in his cognitive function, the accident clearly exacerbated his long-standing depression…

*Id.* at *3-5 (internal citations and quotations omitted).

Here, unlike the doctor in *Cochell* who examined the plaintiff for over two years and conducted extensive testing, it appears that Dr. Owens only examined Plaintiff twice in May of 2016 and it is unclear what, if any, testing she conducted. (AR 500, 658-69). And unlike the

opinion in *Cochell*, which included detailed reports of the plaintiff's symptoms, here Dr. Owens' report contains a restatement of Plaintiff's subjective symptoms.

> Veteran states that he is unable to work at this time due to irritability, assaultiveness [sic], danger of hurting others, sleeplessness and depression….Veteran meets criteria at this time for PTSD. He experiences a level of disturbance from the PTSD that results in intense irritability, short temper, poor executive functioning and poor impulse control. He has poor sleep, poor relationships with others and a difficulty regulating his emotions on a level that is conducive to maintaining full time employment at this time.

(AR 510-11).

The Court finds that the ALJ was thus not required to discuss Dr. Owens' report to interpret the record. The Court agrees with the Commissioner that Dr. Owens' report was based on Plaintiff's subjective reports, rather than objective evidence, and thus did not contribute to the record beyond that which Plaintiff already alleged. Plaintiff is not entitled to remand based on his argument regarding Dr. Owens.

### B. The ALJ properly evaluated Dr. Goldman and LCSW Jones' opinions.

Plaintiff argues that the ALJ failed to give good reasons for assigning Dr. Goldman and LCSW Jones' opinions "little weight" even though both physicians were treating physicians since 2016. (ECF No. 21 at 15-16). Plaintiff asserts that the ALJ did not discuss the physicians' length of treating relationships, frequency of examinations, nature and extent of the treating relationships, or supportability of their opinions in finding that they had little weight. (*Id.*). And in finding that the physicians' opinions were inconsistent with the record, the ALJ relied on a series of string cites that, in fact, reveal mental impairments. (*Id.* at 17-21). Plaintiff adds that the normal mental functioning the ALJ derived from these pages of the record were "cherry picked" to avoid the mental impairments. (*Id.* at 21).

The Commissioner responds that Dr. Goldman and LCSW Jones' opinions relied on subjective symptom reports—rather than objective evidence—and were inconsistent with the record showing essentially normal mental status findings. (ECF No. 22 at 13). As discussed

more fully below, the Commissioner adds that, because the ALJ found Plaintiff's symptom allegations unpersuasive, he properly rejected Dr. Goldman and LCSW Jones' opinions that depended on the unpersuasive allegations. (*Id.*). Regarding the string cite, the Commissioner argues that the ALJ was citing dozens of examples with which Dr. Goldman and LCSW Jones' opinions were inconsistent. (*Id.* at 14). The Commissioner concedes that certain of the cites were irrelevant or showed only that Plaintiff was alert and oriented but points out that the other records show nearly forty more complete mental status examinations. (*Id.* at 15). The Commissioner argues that Plaintiff's competing interpretation of these records does not establish reversible error. (*Id.*).

In reply, Plaintiff does not directly address the issue of Dr. Goldman and LCSW Jones' opinions. (ECF No. 24). He argues, however, that the Commissioner—although correctly describing that there are normal mental status examinations in the record—only gave a one-sided description of the record. (*Id.* at 2-3). Plaintiff asserts that it was error for the ALJ to emphasize the medical findings describing improved mental symptoms to the exclusion of other medical findings demonstrating the contrary. (*Id.*).

An ALJ may reject a treating physician's uncontradicted opinion by providing "clear and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). If, however, a treating physician's opinion is contradicted, the ALJ may only reject it with "specific and legitimate" reasons supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 628 (9th Cir. 2007). This is to mean that the ALJ "'must do more than offer his conclusions; he must set forth his own interpretations and explain why they, rather, than the doctor['s], are correct.'" *Belanger v. Berryhill*, 685 Fed. App'x 596, 598 (9th Cir. 2017). The ALJ may not "cherry-pick" from mixed results to support a denial of benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1017 n. 23 (9h Cir. 2014) (citing *Scott v.* Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011) which discussed mixed results relating to bipolar disorder, a disease the very nature of which is fluctuations in symptoms so, "any single notation that a patient is feeling better…does not imply that the condition has been treated").

Here, although he relied on a string cite, the ALJ properly assigned little weight to Dr. Goldman and LCSW Jones' opinions. Dr. Goldman and LCSW Jones both had treating relationships with Plaintiff, meaning that—under the applicable, pre-March 27, 2017 standard—the ALJ was required to give their opinions greater weight. The ALJ acknowledged this but noted that their opinions were inconsistent with the overall record and primarily based on the Plaintiff's subjective reporting. (AR 26). Having concluded that their opinions were inconsistent, the Court finds that the ALJ adequately provided specific and legitimate reasons why his interpretations, rather than Dr. Goldman and LCSW Jones' were correct. The ALJ pointed out that Plaintiff exhibited good eye contact, normal speech, logical and goal directed thought process, unremarkable thought content, intact memory, intact attention, good impulse control, and no signs of suicidal ideations or perceptual disturbances during objective exams. *Id.* He noted that Plaintiff frequently presented with intact insight and judgment and showed unremarkable mood, affect, and behavior on some occasions. *Id.* Plaintiff accuses the ALJ of "cherry picking" these interpretations from mixed results. But having reviewed the citations on which the ALJ relies, the Court finds that the ALJ relied on the objective reports—rather than the subjective reports—in the record to reach his interpretation. This squares with his reason for assigning little weight to Dr. Goldman and LCSW Jones' opinions: they relied primarily on Plaintiff's subjective reporting. More importantly, the ALJ's citations were not to mixed results—such as a single notation of positive objective findings amongst negative objective findings. Instead, he pointed to primarily consistent positive objective findings. The Court thus finds that the ALJ appropriately assigned Dr. Goldman and LCSW Jones' opinions little weight.

  **C.** ***The ALJ's credibility assessment is not faulty for failing to address Plaintiff's work history.***

Plaintiff argues that the ALJ's credibility determination failed to contemplate Plaintiff's exemplary work history. (ECF No. 21 at 24-25). He asserts that the ALJ's consideration of Plaintiff's credibility did not follow Agency policy because of this failure. (*Id.*). The Commissioner responds that there is no law requiring an ALJ to address a claimant's work history when evaluating symptom allegations, like the ALJ did here. (ECF No. 22 at 10). To the

contrary, other credibility factors can outweigh a good work history, and the Commissioner argues that other portions of the record belied his symptom allegations. (*Id.* at 9-10). The Commissioner points out one instance in which Plaintiff asked Dr. Giao Chau Nguyen—his treating psychiatrist—to excuse him form work because he did not like his job at the post office and found it unfulfilling, which request Dr. Nguyen refused. (*Id.* at 9).

While an ALJ must consider a plaintiff's representations about his symptoms and limitations, his statements about his "pain or other symptoms will not alone establish that" he is disabled. 20 C.F.R. § 404.1529(a). In fact, an "ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to [the Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, absent affirmative evidence that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). Specifically, the ALJ must state why the testimony is unpersuasive and point to what testimony or evidence undermines the claimant's testimony. *See, e.g., Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (upholding ALJ's credibility determination when he pointed out numerous lab results that contradicted his subjective complaints); *see also Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006) (ALJ required to provide a "narrative discussion" and state specific evidence in the record supporting an adverse credibility finding). As the Ninth Circuit has recognized, this is not an easy requirement to meet because the "clear and convincing standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). This is because the lack of an objective medical basis is just one factor in evaluating the credibility of a claimant's testimony and complaints. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). Moreover, the Court notes that SSR 16-3 clarified that the ALJ no longer must make credibility findings, but rather, evaluate the extent to which the

alleged functional limitations and restrictions due to pain and other symptoms are consistent with the other evidence. An ALJ's decision is sufficiently supported when the ALJ summarizes facts and conflicting clinical evidence in a detailed and thorough fashion, stating his interpretation and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (noting that case law does not require an ALJ to expressly state: I reject __ because of __ reason). If "evidence can support either affirming or reversing the ALJ's decision," the Court may not substitute its judgment for that of the ALJ's. *Robbins*, 466 F.3d at 882.

Here, the Court finds that the ALJ properly articulated clear and convincing reasons for rejecting Plaintiff's testimony and was not required to articulate his exemplary work history in deciding whether to reject it. Plaintiff has not provided mandatory authority for the proposition that the ALJ was required to discuss his work history. Nor has Plaintiff pointed out what portions of the Agency policies and social security regulations he cites require the ALJ to directly address work history. On the other hand, the ALJ provided a narrative discussion of why specific evidence—Plaintiff's demands to providers to fill out forms—undermined his testimony. The ALJ pointed out that one of Plaintiff's providers noted that he "would find it very difficult to continue writing letters to excuse him from work." (AR 23). The ALJ pointed to other providers that noted that Plaintiff demanded for them to fill out forms with which they were not comfortable completing. (AR 23-24).

The ALJ also provided clear reasons why Plaintiff's testimony was inconsistent with the record by pointing out portions of Plaintiff's testimony and then describing which portions of the record were inconsistent with that testimony. (AR 22-26). This includes noting that, although Plaintiff testified experiencing severe mental health symptoms related to his PTSD, his objective medical records consistently demonstrated positive objective findings. (AR 23). The ALJ discussed Plaintiff's allegation that he has migraine headaches but noted that the record does not include neurological testing or diagnostic imaging, instead showing conservative treatment with medication. (AR 24). The ALJ pointed out that, other than treatment for non-severe kidney stones, Plaintiff received minimal treatment for his physical condition. (AR 24). The ALJ also relied on Plaintiff's reported daily activities, pointing out that they indicated he could perform

basic work-related tasks because Plaintiff reported that he prepared simple meals, performed personal care independently, lived with friends, shopped in stores, never lost a job due to difficulty getting along with others, could count change, manage money, go out alone, and drive a car. (AR 25).

While the ALJ relied on string cites to the record, having reviewed the portions of the record included in the cites, the Court finds that those portions of the record support the ALJ's findings that Plaintiff's testimony was inconsistent. As discussed above, the objective findings in those records demonstrate that Plaintiff was "alert, oriented, cooperative, pleasant, dressed and groomed appropriate, and in no acute distress" throughout much of the relevant period and received conservative treatment. The Court thus finds the ALJ's determination that Plaintiff's testimony was not consistent with the record to be sufficiently supported even without a discussion about his work history.

### D.   *Plaintiff is not entitled to remand on his constitutional argument.*

Having determined that remand is not warranted based on the merits-based argument presented, the Court turns to Plaintiff's constitutional challenge.[2] Plaintiff argues that he is entitled to relief on appeal because the tenure of the Commissioner of Social Security heading the agency at the time of his denial of benefits—former Commissioner Andrew Saul—was unconstitutional in that he could not be removed by the President without cause. (ECF 21 at 26).[3]

---

[2] The Court notes at the outset a procedural defect in that Plaintiff did not plead a constitutional violation in his complaint filed with the court. (ECF No. 1-1). Under the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the claimant is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Montoya v. Colvin*, No. 2:16-cv-00454-RFB-NJK, 2016 WL 890922, at *1-3 (D. Nev. Mar. 8, 2016) (applying Rule 8 in the Social Security context). Moreover, that an unpled claim is later presented through argument in substantive briefing is insufficient to preserve the claim. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008). Hence, it appears Plaintiff waived his constitutional argument by not pleading it. *See, e.g., John R. v. Comm'r of Soc. Sec.*, No. c20-6176-MLP, 2021 WL 5356719, at *5 (W.D. Wash. Nov. 16, 2021). As the Commissioner did not raise the waiver issue, however, the Court will address the constitutional argument on its merits.

[3] This is one of several constitutional issues that has been percolating within the administrative law realm in recent years, adding importance to being clear as to what Plaintiff is *not* arguing. Most significantly, Plaintiff concedes that "[t]his appeal is not an Appointments Clause challenge…" (ECF No. 24 at 3). As such, this case does not involve an appointments challenge

He argues that the Court should be remanded for a *de novo* hearing because the ALJ and the Appeals Council decided the case under Saul's delegation of authority—which authority was unconstitutional—and that the ALJ and Appeals Council followed regulations promulgated by Saul. (*Id.* at 26-27). The Commissioner responds that the ALJ who decided Plaintiff's claim was appointed by an *acting* Commissioner of Social Security—Commissioner Nancy Berryhill—whom the president could have removed at will. (ECF No. 22 at 17). Additionally, even if the ALJ had been appointed by a tenure-protected Commissioner, Plaintiff has not shown a sufficient nexus between the constitutional infirmity and his denial of benefits to warrant relief. (*Id.* at 20-22). In reply, Plaintiff drops his argument regarding the ALJ and instead relies on his arguments regarding the Appeals Council. (ECF No. 24 at 3-7). Namely, that the Appeals Council's decision was faulty because it followed Saul's regulations and under authority delegated by Saul which he did not possess. (*Id.*). For the first time in reply, Plaintiff relies on statements he attributes to President Biden to argue that he has demonstrated the necessary link between the removal provision and his case to obtain relief.[4] (*Id.*).

          1.      <u>Constitutional violation.</u>

The Social Security Independence and Program Improvements Act of 1994 provides that the Social Security Administration is a component within the United States Department of Health and Human Services that will act as an "independent agency in the executive branch of the Government." 42 U.S.C. § 901(a). The Act provides further that the Commissioner is "appointed for a term of 6 years" and "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3). The Supreme

---

like those raised in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) or *Carr v. Saul*, 141 S. Ct. 1352 (2021). This distinction is of particular importance because an appointment violation is remedied with a new hearing before a properly appointed official. *Lucia*, 138 S. Ct. at 2055. For the reasons discussed below, relief is not provided as a matter of course with respect to the "tenure" issue that Plaintiff is relying upon in this case. *See Collins v. Yellen*, __ U.S. __, 141 S. Ct. 1761, 1788 (2021) (distinguishing *Lucia*).

[4] The irony is not lost on the Court that Plaintiff brings these arguments up to support his due process argument for the first time in a reply to which the Commissioner does not have an opportunity to respond.

Court has held in other contexts that similar tenure protections violate separation of powers principles and consequently, are unconstitutional. *See Collins*, 141 S. Ct. at 1783-87 (holding that the tenure protection at the Federal Housing Finance Agency is unconstitutional); *see also Selia Law LLC v. Consumer Fin. Prot. Bureau*, __ U.S. __, 140 S.Ct. 2183, 2197-2207 (2020) (same for Consumer Financial Protection Bureau). The current Commissioner has conceded that the tenure protection specific to the Social Security Administration is likewise unconstitutional and other courts have reached the same conclusion. *See Brand v. Kijakazi*, No. 2:20-cv-02219-NJK, 2021 WL 5868131, at *5 (D. Nev. Dec. 10, 2021) ("[t]he current Commissioner [Kijakazi] concedes that the tenure protection specific to the Social Security Administration is likewise unconstitutional…"); *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL 2981542 (O.L.C. July 8, 2021); *see e.g.*, *Lisa Y. Comm'r of Soc. Sec.*, __ F. Supp. 3d __, 2021 WL 5177363, at *5 (W. D. Wash. Nov. 8, 2021). Having agreed with the parties that 42 U.S.C. § 902(a)(3)'s removal restriction violates the separation of powers under *Collins* and *Selia*, the Court must now turn to Plaintiff's requested remedy: reversal and remand for a new hearing and decision. *See Selia*, 140 S.Ct. at 2207.

      2. <u>Entitlement to relief.</u>

  Plaintiff is not entitled to relief because he has not shown compensable harm. Plaintiff's arguments—narrowed in reply—purport to establish two distinct injuries. First, Plaintiff relies on a White House statement regarding Saul to argue that, because President Biden "would have fired former Commissioner Saul upon taking office" if it were not for the unconstitutional provision, Saul had no authority to delegate to the Appeals Council. Plaintiff reasons that, because it had no authority to do so, the Appeals Council's decision to deny Plaintiff's request for review is an injury traceable to the removal provision. Second, Plaintiff relies on a portion of the White House statement that Saul "reduced due process protections for benefits appeals hearings" to argue that Plaintiff's injury stemmed from the fact that the Appeals Council followed Saul's reduced-due-process-procedures in denying Plaintiff's request for review. Both arguments fail.

  Plaintiff's first argument—arguing that Saul had no authority to delegate—fails because there is no argument that Saul and the Appeals Council were not properly *appointed*. The

plaintiff shareholders in *Collins* similarly sought an order setting aside the third amendment that was at issue in that case, asserting that it "was adopted and implemented by officers who lacked constitutional authority and that their actions were therefore void *ab initio*." *Collins*, 141 S.Ct. at 1787. *Collins* concluded that there was "no reason to regard any of the actions taken by the Federal Housing Finance Agency in relation to the third amendment as void" because "[a]ll the officers who headed the FHFA during the time in question were properly *appointed*." *Id.* (emphasis in original). While "the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office." *Id.*

Although indirectly, Plaintiff's argument appears to rely on reasoning set forth by the Supreme Court in *Lucia v. SEC*, that actions of an agency are constitutionally defective when they have been completed under unconstitutional authority. *See Lucia v. SEC*, 138 S.Ct. 2044, 2055 (2018). There, the plaintiff challenged an administrative proceeding of the Securities and Exchange Commission before an ALJ on grounds the ALJ was unconstitutionally *appointed* in violation of the Appointments Clause. *See id.* at 2049-51. The Supreme Court agreed. *See id.* The ALJ had been appointed by *SEC* staff members, but the Appointments Clause required that ALJs had to be appointed by the President, a court of law, or the head of a department. *Lucia*, 138 S. Ct. at 2050-52. The appropriate remedy in that case was a new hearing before a properly *appointed* ALJ. *Id.* at 2055.

But this case is distinguishable from *Lucia*. Here, like *Collins*, while the statue at issue may unconstitutionally limit the President's power to *remove* the Commissioner, there is no asserted defect in the Commissioner's *appointment*, and thus, "no reason to regard any of the actions taken by the [SSA in relation to Plaintiff's disability determination] as void." *Collins*, 141 S.Ct. at 1787. As the Court pointed out in *Collins*, *Lucia* involved an "exercise of power that the [Government] actor did not lawfully possess." *Collins*, 141 S.Ct. at 1788 (citations omitted). But that is not the case here.

Plaintiff's second argument—that the Appeals Council deprived him of due process because it followed Saul's guidelines, which the White House admonished for reducing due

process protections—fails because it does not demonstrate compensable harm. In *Collins*, the Supreme Court acknowledged that "it is still possible for an unconstitutional provision to inflict compensable harm." *Collins*, 141 S.Ct. at 1789. The court gave two examples of when this might be the case:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.
>
> *Id.* at 1789.

The Supreme Court remanded for the lower court to resolve whether the "unconstitutional removal provision inflicted harm." *Id.* In *Decker Coal Co. v. Pehringer*, the Ninth Circuit subsequently confirmed that "the key…is demonstrating that the unconstitutional provision actually caused the plaintiff harm." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) (citing *Collins*, 141 S.Ct. at 1788-89). The Ninth Circuit concluded that "[a]bsent a showing of harm, we refuse to unwind the decisions below." *Id.*

In his reply, Plaintiff argues that the timing of: (1) the White House's request for Department of Justice guidance on removing Saul immediately after *Collins*; and (2) President Biden's removal of Saul from office the day after the DOJ issued its memorandum suggests that the President believed he could not remove Saul. Plaintiff also references a statement—that Plaintiff attributes to the President—that Saul undermined and politicized Social Security disability benefits, reduced due process protections, and took other actions contrary to SSA's mission. (ECF No. 24 at 6). Plaintiff cites a news article for this statement. (*Id.* at n.2).

But Plaintiff's speculation about the timing of Saul's termination does not come close to the specific harm the Supreme Court discussed in *Collins*. Plaintiff attributes a statement of displeasure with Saul to the President. However, the news article indicates the statements came

from an unidentified White House official.[5] Plaintiff has not presented evidence that the *President* expressed his displeasure with Saul, or that the *President* said he would remove Saul if the statute did not stand in his way. Nor has Plaintiff cited a lower court case that blocked the President's removal of Saul. *See Jackson v. Kijakazi*, 2:20-cv-02236-CSD, 2022 WL 716810, at *6 (D. Nev. March, 10, 2022) (applying this line of reasoning to a similar argument).

Moreover, Plaintiff does not identify a particular due process violation that influenced his disability determination. Plaintiff speculates that "President Biden believed that former Commissioner Saul had infringed upon the constitutional due process rights of disability applicants like this Plaintiff." (ECF No. 24 at 6). But this statement does not connect the asserted due process violations with his case. Plaintiff also asserts that the "direct casual nexus" comes from the fact that the White House statement proves that Saul had no power to delegate to the Appeals Council. (ECF No. 24 at 7). But this argument again conflates the *removal* clause at issue here with the *appointment* clause at issue in *Lucia*. The Court has already explained why that line of reasoning lacks merit.

Plaintiff does not provide evidence of any link between the unconstitutional removal provision and his unfavorable determination. *See Decker*, 8 F.4th at 1138 (declining to reverse an administrative level decision when there was " no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions"). There is no basis to reverse and remand the disability determination for a new hearing. Because of the Court's conclusions, it need not reach the Commissioner's remaining arguments on this issue.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for remand (ECF No. 21) is **denied.**

---

[5] *See* Nicole Ogrysko, *Biden fires Saul as SSA commissioner*, FEDERAL NEWS NETWORK (July 9, 2021, 5:28 PM), https://federalnewsnetwork.com/people/2021/07/biden-fires-saul-as-ssa-commissioner/.

**IT IS FURTHER ORDERED** that the Commissioner's cross motion to affirm (ECF No. 22) is **granted.** The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: July 15, 2022

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE